COLONNA AND COMPANY, INC., Plaintiff, *v.* ANTHONY M. MEYER-STEIN, INC., et al., Defendants.

Supreme Court, Trial Term, Queens County, March 28, 1950.

*Henry Turin* for Anthony M. Meyerstein, Inc., defendant.

*M. Carl Levine* and *Albert Foreman* for Aetna Casualty and Surety Company, defendant.

*Herbert G. Friedgen* for plaintiff.

PETTE, J.   Plaintiff instituted this action to recover the sum of $15,000, alleged damages by reason of defendant ANTHONY M. MEYERSTEIN, INC.'s (hereinafter referred to as "MEYER-

STEIN ") failure to vacate the premises located at 42–42 Vernon Boulevard, Long Island City, Queens County, New York, hereinafter referred to as the " Queens Premises ".

The claim against the AETNA CASUALTY & SURETY COMPANY (hereinafter referred to as " Aetna ") is in the sum of $5,000, based on a bond issued pursuant to an order of the Appellate Term, which bond provides that Aetna " does hereby pursuant to the statute in such case made and provided, undertake, that the appellant, ANTHONY M. MEYERSTEIN, INC., will pay all rents, rental value, damages and costs of appeal which may be awarded against said appellant not exceeding the sum of Five Thousand ($5,000) Dollars."

The answer of defendant " Meyerstein " and amendment thereto, denied the material allegations of the complaint and interposed additional defenses together with counterclaims predicated upon alleged overpayment of rent. The answer and amendment thereto of defendant called " Aetna " likewise denied material allegations of the complaint and interposed additional defenses.

The testimony herein was duly taken for four days at great length, before this court without a jury, before whom there were submitted numerous exhibits; and the presentation of many issues of law and fact requiring careful consideration.

According to good advice by the oft-quoted Alice in Wonderland, the proper way to recount a story is merely to " Begin at the beginning and keep right on to the end."

The voluminous transcribed record discloses proof by the plaintiff's president, Benjamin A. Colonna, (a) that on January 23, 1947, it acquired title to certain real property known as 42–42 Vernon Boulevard, Long Island City, in the county of Queens, N. Y.; (b) that defendant, Anthony M. Meyerstein, Inc., was in possession at the time under an expired lease, as a month-to-month tenant, pursuant to an agreement dated September 9, 1943, and certain letters; (c) proceedings under a thirty-day notice of eviction, dated November 27, 1947, were directed to said former tenant defendant, together with other papers, inclusive of the final order and affirmance thereof by the Appellate Term, Second Department, in the prior holdover summary proceedings, instituted by plaintiff, as landlord, in the Municipal Court of the City of New York, First District, Borough of Queens, index No. 177–1947; (d) a certified copy of the order of the Appellate Term, Second Department, dated September 2, 1947, granted an application of said former tenant defendant for

a stay of execution of the warrant for possession under the final order; (e) a bond in the sum of $5,000 was executed by defendant, Aetna Casualty and Surety Company, dated September 5, 1947; (f) an order of Municipal Court Justice WINTERS was duly made and entered on November 7, 1947, in said summary proceedings; (g) an extension of bond to cover stay was executed by defendant surety company, dated November 13, 1947; an order of Municipal Court Justice WINTERS was duly made and entered on December 3, 1947, in said summary proceedings; (h) an extension of bond was executed by the defendant surety company, dated December 4, 1947; (i) an order of Municipal Court Justice WINTERS was duly made and entered on December 15, 1947, in said summary proceedings; (j) an extension of bond was dated December 17, 1947, and (k) an order of the Appellate Term, Second Department, was dated June 13, 1947.

Upon consent, the first and second counterclaims of defendant " Meyerstein " were severed, without prejudice and the answer of the defendant " Aetna " as to the setoffs, was deemed amended accordingly.

A concession was made by the respective parties that the defendant, Anthony M. Meyerstein, Inc., surrendered possession of the demised premises on December 23, 1947.

Plaintiff offered additional testimony to the effect that its business in February, 1947, was located at Locust Avenue and the East River, County of Bronx, N. Y., under the provisions of a written lease with its landlord, Petroleum Terminal Corporation. Photographs of these premises, the improvements, stock and equipment thereon were offered in evidence. A letter of Island Petroleum Corporation to Baucol Realty Corporation, dated October 9, 1946, claimed to have been part of the lease, was also offered first for identification, and later in evidence, together with a paper containing the signature of Harold L. Valentine, president of Petroleum Terminal Corporation, purporting to establish compliance with the provisions of the emergency rent laws of New York.

Checks, representing payment of rent by plaintiff for the Locust Avenue property to Petroleum Terminal Corporation, were also received in evidence. This purported to establish payment of rent from December 1, 1947, to March 31, 1948, in the sum of $8,000. Plaintiff offered proof as to the alleged delay in taking possession of the Long Island City property after the tenant-defendant had surrendered possession thereof in December, 1947, which was in the nature of United States Department of Commerce weather reports.

Testimony was also submitted showing that, with reference to the Bronx property, prior to October, 1944, and including March 1, 1943, the "freeze date", the rent paid was $350 per month, which increased to $665 per month for the period of October, 1944, to December, 1945, and subsequently to $1,000 per month.

Originally, one Colbau Realty Corporation, was the owner of the Queens premises, and entered into an agreement of lease with "Meyerstein" for a period of one year commencing September 1, 1943 and ending August 31, 1944, with the option in "Meyerstein" to renew the lease for two additional terms of one year each. These options were exercised and the last of the terms ended on August 31, 1946. Thereafter "Meyerstein" continued in possession of the premises as a statutory tenant, pursuant to the provisions of chapter 3 of the Laws of 1945 of the State of New York, as amended.

On January 23, 1947, Colbau Realty Corporation conveyed the premises to the plaintiff. All the outstanding stock of the Colbau Realty Corporation and the plaintiff corporation are owned in equal proportions by BENJAMIN A. COLONNA and LOUIS BAUM, who are also the directors of both corporations.

"Meyerstein" had, during the course of the war, numerous contracts with the United States of America for the design, fabrication and erection of many heavy cranes and other items of war equipment. It had stored in the yard a large number of cranes ordered by the United States Government, which were fully fabricated and ready for shipment, but which the United States Government directed "Meyerstein" to hold in its yard and which "Meyerstein" could not deliver until given permission to do so by the Federal Government, and it was not until the Federal Government took possession of the cranes and allowed them to be removed from the yard, that "Meyerstein" was able to deliver possession of the premises to the plaintiff.

A few days after the cranes were taken by the United States Government, "Meyerstein" vacated the premises. Prior thereto plaintiff had instituted summary proceedings to dispossess "Meyerstein" as a holdover tenant, and the United States Attorney, on behalf of the Treasury Department, submitted a request to the court that additional time be given to "Meyerstein" to vacate the premises. A final order was entered in favor of plaintiff on August 15, 1947. "Meyerstein" appealed to the Appellate Term, Second Department, which court granted a stay provided a bond be furnished. The Appellate Term, Second Department, affirmed the final order. Successive stays

of execution were granted until December 22, 1947. "Meyerstein" vacated the premises on December 23, 1947.

The primary issue herein resolves itself into this proposition, namely: Is the plaintiff entitled to any damages where the former tenant-defendant, "Meyerstein", held over in possession of commercial real property by virtue of valid court orders in the summary proceedings instituted by the former landlord plaintiff?

To begin with, the soundness of plaintiff's legal proof in attempting to establish its prima facie case for special damages, is open to serious question for the reason that the complaint is predicated upon alleged detainer damage. This theory might be applicable *if the factual situation involved an overstaying tenant being treated as a trespasser. (Hinsdale* v. *White,* 6 Hill 507; *Keegan* v. *Kinnare,* 123 Ill. 280; Sutherland on Damages [4th ed.], 3101; *Kespert* v. *Union Ind. Co.,* 198 N. Y. S. 532.) Defendant "Meyerstein", however, cannot be deemed a trespasser as a matter of law, because its original occupancy was by virtue of a lease and its continuation of possession after the entry of the final order in favor of the plaintiff, was by virtue of valid court orders, duly made and entered by Municipal Court Justice WINTERS, pursuant to subdivision (1) of section 8 of chapter 3 of the Laws of 1945, as amended, which provides, in part: "Where a final order has been entered in any proceeding to evict a tenant pursuant to the provisions of this section, the court shall have power to stay the issuance of a warrant for a period not to exceed six months * * *." The final order in the holdover summary proceedings was not signed until August 15, 1947. The court had the right to stay the issuance of a warrant to February 15, 1948, although the tenant defendant moved out of the premises by December 23, 1947. It is significant that at no time did plaintiff challenge the validity of the aforesaid orders of Municipal Court Justice WINTERS by way of an appeal or review in another forum.

Until such time as the statutory tenancy was terminated, defendant "Meyerstein" was not a trespasser or holdover nor subject to any damage claims by the plaintiff.

It is conceded that the law controlling upon the respective parties herein is the Commercial Rent Law (L. 1945, ch. 3, as amd.) In the leading case of *Stern* v. *Equitable Trust Co. of New York* (238 N. Y. 267), construing the emergency rent laws of 1920, the Court of Appeals, in a learned opinion written by Judge POUND, said, in part (pp. 269–270): "By suspending pos-

sessory remedies under the lease, these laws extended, against the will of the landlord, the right of the tenant to remain in possession of the leased premises so long as he continued to pay what the Laws style ' a reasonable rental ' or ' a reasonable rent or price for their use and occupation.' The tenant thus remains in possession, not by virtue of any agreement, express or implied, either as to duration of term or amount of rent, but by virtue of the compulsion which the law exerts on the landlord to allow him to remain. *The tenant does not by remaining in possession tender an option to the landlord to put him out as a trespasser; neither does he tender an option to allow him to remain as a tenant for any renewed or definite term. The tenant does not offer to remain in possession of the premises. He insists upon doing so. The landlord does not accept his proposition. The law forces it upon him.* The tenant does not offer any proposition to the landlord upon which the conventional relation of landlord and tenant, as to length of term and amount of rent, based on offer and acceptance, can be inferred. To this extent the landlord is optionless and the tenant stands on his statutory rights which become the measure of his term and of his liability." (Italics supplied.)

It has been consistently held that the rights and obligations of the parties under a lease are projected into and become part of the statutory tenancy, except where they are plainly inconsistent with the act.

The statute made " Meyerstein's " possession legal; it superseded the common-law provisions and the tenant is entitled to possession for the period of the stay provided by the act. (*Cohen* v. *Reckseit,* 184 Misc. 107.) As stated by Justice HOFSTADTER in the case of *Weiss* v. *Metropolitan Life Ins. Co.* (184 Misc. 122): " After the expiration of the tenants' two-year lease on September 30, 1943, the landlord instituted summary holdover proceedings in the Municipal Court and obtained a final order on October 15, 1943, awarding it possession of the premises. However, the Municipal Court Justice simultaneously stayed all proceedings on the part of the landlord until January 15, 1944, and the tenants were continued in possession. In the meantime, the Rent Regulation for Housing in New York City Defense-Rental Area (8 Fed. Reg. 13914) was promulgated on November 1, 1943, in accordance with the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*). *Thereafter* on March 1, 1944, the landlord procured a warrant of dispossess. Since the landlord-tenant relationship is not terminated until the issuance of the warrant, and a warrant was not issued before Novem-

ber 1, 1943, the tenants are entitled to the protection of the rent regulations. (*Matter of Concord Estates* v. *Burke,* 184 Misc. 347; *Schwartz* v. *Trajer Realty Corporation,* 56 F. Supp. 930; *Leeb* v. *Elmorton Bldg. Corporation,* U. S. Dist. Ct., S. D. N. Y., Jan. 19, 1944, COXE, J; *Lubin* v. *Streg,* Inc., 56 F. Supp. 146.) ''

All recent authorities agree that the relationship of landlord and tenant continues to exist until the warrant of dispossess issues, and where the execution of the warrant is stayed by the provisions of the statute, the relationship of landlord and tenant still continues.

In discussing this exact proposition of law the court stated in *People ex rel. Rayland Realty Co.* v. *Fagan* (194 App. Div. 185, 187, 188, affd. 230 N. Y. 653): '' It follows that until the warrant issues the relation of landlord and tenant exists, and so the proceeding is not terminated by the final order. I think that maugre the final order this proceeding should be regarded as ' pending ' within the purview of this statute. (*Wegman* v. *Childs,* 41 N. Y. 159; *Pitt* v. *Davison,* 37 id. 235, 241; *Mulstein Co.* v. *City of New York,* 213 id. 308, 314.) * * * The final order in the supplementary proceeding does determine every question litigated or that may on the issues raised be litigated, relating to the existence and validity of the lease and the relation of the parties (*Reich* v. *Cochran,* 151 N. Y. 127), but it does not, as we have seen, terminate the relation of landlord and tenant; that is done by the warrant which is a subsequent step in the procedure itself. (Code Civ. Proc. Sec. 2253). ''

Considering the provisions of the State of New York emergency rent control statutes in the light of the evils to be remedied and the purposes to be effected, and with the guidance of the source materials from which the statutes were constructed the conclusion irresistibly follows that the former tenant defendant acted in accordance with its statutory rights which necessarily become the measure of its tenure in the demised premises and of its liability. Accordingly, the complaint is dismissed upon the merits as to the defendant Anthony M. Meyerstein, Inc. (*Barrow Realty Corp.* v. *Village Brewery Restaurant,* 272 App. Div. 262; *130 West 57 Corp.* v. *Hyman,* 188 Misc. 92, citing *Stern* v. *Equitable Trust Co. of New York, supra; Lewittes & Sons* v. *Spielmann,* 190 Misc. 35.)

As to the alleged cause of action upon the bond against the defendant Aetna Casualty and Surety Company, this court is inclined to follow the principles of law enunciated in the leading case of *deRaismes* v. *Thomas* (260 N. Y. 272), wherein summary proceedings were instituted against the defendant, resulting in

a final order dispossessing the tenant. The tenant appealed to the Appellate Division, Second Department, and procured an order staying the execution of the order of dispossession until the determination of the appeal, upon the filing of an undertaking, conditioned upon terms prescribed by that tribunal. Such an undertaking, executed by the defendant, Harold Thomas, as principal, and the defendant, American Surety Company of New York, as surety, was subsequently filed. By this instrument, the defendants undertook, in a sum not to exceed $5,000 that " if said appeal be dismissed or determination is rendered against the appellant, he will pay any costs and damages and any damages or loss which may * * * have been occasioned through or because of the petitioner herein being kept out of possession and the value of the use and occupation of the premises subsequent to the institution of the special proceeding. " The final order was affirmed on the appeal, and then an action was brought upon the undertaking. After a trial of the issue at Special Term of the Supreme Court, Queens County, a finding was made that the damages suffered by the plaintiff and recoverable by him, aggregated the sum of $1,500.

Reversing the judgment of the Trial Term and of the Appellate Division, the Court of Appeals, in an opinion written by Judge KELLOGG, said, in part: (p. 275) " We think that the undertaking was intended to secure the plaintiff only against a natural loss which might have accrued through nonpossession; not against a loss resulting from an artificial means resorted to in order to place him in possession. "

The case of *Kespert* v. *Union Ind. Co.* (198 N. Y. S. 532, *supra,* App. Term, [1st Dept.]) is also in point.

The bond in this case provides " that the appellant Anthony M. Meyerstein, Inc. will pay all rents, rental value, damages and costs of appeal which may be awarded against said appellant, not exceeding the sum of $5,000. "

It is undisputed that the costs and disbursements on appeal have been paid, as has the rental value of the premises. Plaintiff may not recover " damages " for the time that the former tenant defendant remained in possession of the premises after the service of the thirty-day notice, since this theory is contrary to and in violation of the provisions and intention of the commercial emergency rent statutes. A statutory tenant is not obligated to vacate and surrender possession merely upon service of a thirty-day notice. He may elect to stand upon his statutory rights and lawfully remain in the premises until the execution of the warrant of dispossess under the final order after

accepting the full benefit of any lawful stay of execution, pursuant to the statutes and law, in such cases, made and provided. Proof submitted by plaintiff to the contrary, was insufficient, against the weight of the evidence as well as the prevailing law.

Accordingly, judgment is directed to be entered dismissing the complaint upon the merits as against both defendants.